IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

TC INVESTMENTS, CORP., *et al.*,

    **Plaintiffs,**

          **v.**                    **CIVIL NO.** 08-1320 (FAB)

SYDNEY BECKER, *et al.*,

    **Defendants.**

**OPINION & ORDER**

BESOSA, District Judge

    Before the Court is the motion for summary judgment filed by defendants, (Docket No. 54).  Having considered the motion for summary judgment, plaintiffs' opposition, and defendants' reply, the Court **GRANTS** the motion for summary judgment, (Docket No. 54).

**DISCUSSION**

I.   **Background**

    **A.**   **Procedural History**

        On November 6, 2009, plaintiffs Jorge Torres-Caratini ("Mr. Torres") and TC Investments, Inc. ("TCI"), filed an amended complaint against defendants Sydney Becker ("Mr. Becker"), Wilma Shapiro ("Ms. Shapiro"), and Judith Becker ("Ms. Becker").  (Docket

No. 36.)[1]  The amended complaint alleges breach of contract and
*culpa in contrahendo*, a tort claim arising in the context of
contract negotiations, pursuant to the Puerto Rico Civil Code.
(Docket No. 36 at 5-6.)  Defendants answered the amended complaint
on November 23, 2009, and included a counterclaim for breach of
fiduciary duty.  (Docket No. 43.)

On March 1, 2010, defendants filed a motion to dismiss
the amended complaint, disputing the basis for subject matter, and
arguing that the amended complaint had insufficient factual
allegations to state a claim for either breach of contract or *culpa
in contrahendo*.  (Docket No. 45.)  On March 29, 2010, plaintiffs
responded with a motion to dismiss the counterclaim.  (Docket
No. 48.)  On June 28, 2010, the Court granted the motion to dismiss
the counterclaim and denied the motion to dismiss the amended
complaint.  (Docket No. 53.)

On July 26, 2010, defendants filed a motion for summary
judgment arguing:  (1) that the contract alleged in the complaint
cannot be proved by non-testimonial evidence, as required under

---

[1] After defendants filed a motion to dismiss the original
complaint based on failure to join an indispensable party,
plaintiff amended the complaint to add Caribbean Properties Group
("CPG"), as a party.  CPG is alleged to have made a joint offer
with TCI to purchase the Beckers' Puerto Rico LLCs, but has not yet
appeared in this litigation despite being served following the
filing of the amended complaint.  (See Docket Nos. 1, 10, 35, &
36.)

Puerto Rico law; (2) that no binding agreement was ever entered into by the parties; and (3) that plaintiff cannot provide evidence sufficient to establish a *culpa in contrahendo* claim. (Docket No. 54.) On August 20, 2010, plaintiffs filed an opposition to the motion for summary judgment arguing: (1) that defendants have waived any requirement that the contract be proved by non-testimonial evidence; (2) that there is sufficient evidence to show a binding agreement between the parties; and (3) that there is sufficient evidence to establish a *culpa in contrahendo* claim. (Docket No. 58.) On September 3, 2010, defendants filed a reply. (Docket No. 61.)

**B.   Failure to Comply with Local Rule 56**

The First Circuit Court of Appeals has "repeatedly . . . emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." <u>Caban-Hernandez v. Phillip Morris USA, Inc.</u>, 486 F.3d 1, 7 (1st Cir. 2007). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is – and what is not – genuinely controverted.'" <u>Id.</u> (quoting <u>Calvi v. Knox County</u>, 470 F.3d 422, 427 (1st Cir. 2006)). Due to the importance of this function to the summary judgment process, "litigants ignore [such rules] at their peril." <u>Id.</u>

          Plaintiffs argue in their opposition to the motion for
summary judgment that defendants have failed to comply with Local
Rule 56(e), which states that:

> Facts contained in a supporting or opposing statement of
> material facts, if supported by record citations as
> required by this rule, shall be deemed admitted unless
> properly controverted. An assertion of fact set forth in
> a statement of material facts **shall be followed by a
> citation to the specific page or paragraph of identified
> record material supporting the assertion.** The court may
> disregard any statement of fact not supported by a
> specific citation to record material properly considered
> on summary judgment. The court shall have no independent
> duty to search or consider any part of the record not
> specifically referenced in the parties' separate
> statement of facts.

Local Rule 56(e) (emphasis added). Plaintiffs claim that
defendants did not include specific references to pages or
paragraphs supporting their additional assertions of fact. (Docket
No. 58 at 6-8.) Plaintiffs argue that, due to this failure, the
Court should deny the motion for summary judgment. <u>Id.</u>

          Indeed, defendants have failed to include a specific
reference to page or paragraph number when citing record support
for their additional assertions of fact. (<u>See</u> Docket No. 54-1.)
Enforcing Local Rule 56(e) to the benefit of plaintiffs at their
request would seem unfair, however, because plaintiffs also ignored
the strictures of Local Rule 56 when drafting their response to
defendants' statement of uncontested facts. (<u>See</u> Docket No. 28-2.)
In fact, plaintiffs largely abandoned the structure prescribed by

Local Rule 56(c) for responding to a moving party's factual assertions on summary judgment.  (See Docket No. 58-1.)

Local Rule 56(c) requires a non-moving party to file with its opposition "a separate, short, and concise statement of material facts" which shall "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule."  Local Rule 56(c) also requires that, if the nonmoving party includes any additional facts, such facts must be in a separate section, set forth in separate numbered paragraphs, and be supported by a record citation.  Where a party does not act in compliance with Local Rule 56(c), "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated."  Id. (citing Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004)).  In Caban Hernandez, the First Circuit Court of Appeals held that, in the context of a motion for summary judgment, where a non-moving party does not admit, deny, or qualify the moving party's assertions of fact as required by Local Rule 56(c), but instead files an "alternate statement of facts in narrative form," a district court is justified in issuing an order deeming the moving party's assertions of fact admitted.  Id. 486 F. 3d at 7-8.

Rather than use the clear terms provided by the local rule, plaintiffs developed their own terminology to "admit, qualify or deny" the factual assertions contained in defendants' statement of uncontested fact. (See Docket No. 58-1 at 1-30.) On many occasions, plaintiffs refuse to contest the factual matters asserted by defendants, but rather engage in lengthy and repetitive legal arguments and conclusions regarding the issue of contract formation in this case. See id. Plaintiff follows these responses with an "additional facts" section containing much of the factual information that should have been included in specific responses to defendants' statement of uncontested facts. See id. This additional facts section serves as a narrative-form explanation of plaintiffs' perspective of this case, drawn largely from a sworn statement by Torres and containing numerous legal conclusions regarding the issues in this case and the evidence submitted by the parties. See id. In short, very little of plaintiffs' response to defendants' statement of uncontested facts complies with Local Rule 56(c), and as a result, none of it will be considered by the Court.[2]

Given plaintiffs' repeated failure to follow the structure outlined in Local Rule 56(c), the Court would ordinarily

---

[2] It should also be noted that, on some occasions, plaintiff also fails to comply with Local Rule 56(e). (See Docket No. 58-1 at 1-30.)

deem the moving party's assertions of fact admitted.  As noted above, however, defendants failed to comply with the basic principle of Local Rule 56(e) that all factual assertions must be accompanied by proper record citation in order to be admitted on summary judgment.  Thus, the parties have failed to provide the Court with a properly submitted factual background on which to decide the present motion.

As previously explained, the purpose of Local Rule 56 is to create an organized and clear representation of issues of fact which are truly contested between the parties.  See Caban Hernandez, 486 F. 3d at 7-8.  By failing to provide such a representation, the parties are effectively asking the Court to ferret through their exhibits in order to rule on the motion for summary judgment.  The Court reminds the parties that it has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts."  See Local Rule 56(e).  Neither will the Court take it upon itself to filter through plaintiffs' response to defendants' separate and legitimate factual assertions placed properly according to Local Rule 56(c).

The parties failure need not, however, further waylay the efficient resolution of the issues presented in the motion for summary judgment and its opposition.  Although the parties'

characterizations of the correspondence between the parties differ,
they do not seem to dispute that such correspondence occurred and
have at least submitted those documents for the Court's review.
(See Docket Nos. 54, 58, & 61.)  This correspondence constitutes
the bulk of the negotiations between plaintiffs and defendants.
Because the claims alleged in the complaint relate to contractual
negotiations between the parties, that correspondence appears to
provide a factual background sufficient to examine both the breach
of contract and *culpa in contrahendo* claims.  Furthermore, the
commercial nature of any contract resulting from those negotiations
must be corroborated by non-testimonial evidence, which in this
case appears to be solely comprised of the aforementioned
correspondence.[3]  See, e.g., Garita Hotel Ltd. P'ship v. Ponce Fed.
Bank, 122 F.3d 88, 89 (1st Cir. 1997).  Given the nature of this
case, its procedural circumstances, and the parties failure to
submit any other relevant evidence properly, the motion for summary
judgment will be decided based on the correspondence submitted by
the parties and any uncontested factual background that may be
gleaned from that correspondence.

_____

[3] Neither party disputes the application of the provision of
the Puerto Rico Commercial Code requiring non-testimonial evidence
to the substantive matters alleged in the complaint.  Plaintiffs
argue only that defendants have waived the application of that
provision. (Docket No. 58 at 5-6.)  As discussed in further detail
below, the Court finds no such waiver.

### C.   Uncontested Facts

As a result of the parties' joint failure to comply with Local Rule 56, the following factual background is comprised primarily of a summary of the correspondence relevant to the parties' contractual negotiations prefaced by basic information regarding the parties.

Defendants are the majority owners of various Limited Liability Companies ("LLC's") created under Delaware law. (Docket No. 36 at ¶¶ 6-7.)  Specifically, defendants collectively own 95% of Plaza San Francisco Investments, LLC, ("PSFI") 95% of Las Piedras Investments, LLC, ("LPI") 100% of Rio Grande Investments, LLC, ("RGI") and 100% of Las Piedras Development, LLC ("LPD"). (See Docket No. 58-1 at 73.)  Those LLC's own several shopping centers and developments in Puerto Rico. (Docket No. 54-2 at 1-2.) TCI owns the remaining 5% shares of Plaza San Francisco, LLC, and Las Piedras Investments, LLC.  Id.  Mr. Torres is the sole owner of TCI.  (Docket No. 36 at ¶ 10.)  At the time of the relevant negotiations, the abovementioned LLC's contracted with TCI to manage the operations of their constituent properties. (Docket No. 36 at ¶ 8.)

During the year 2007, CPG began to make offers to purchase some of the LLC's owned by defendants. (See Docket No. 58-1 at 48-66.)  These offers were received by Mr. Torres,

acting on behalf of TCI in its management capacity, and then forwarded to Mr. Becker, the managing member of defendants' LLC's. Id. At some point after CPG's initial offers, Mr. Torres, acting on behalf of TCI, made an offer to acquire some of defendants' LLC's. (See Docket No. 58-1 at 64.) On August 15, 2007, Mr. Becker sent a letter addressed to Mr. Torres indicating that defendants would prefer that any offer for defendants' LLC's include the sale of all of their Puerto Rico properties. (Docket No. 58-1 at 64.)

    On October 30, 2007, Mr. Torres sent a letter to Mr. Becker that included an offer from TCI to purchase defendants' remaining equity interests in PSFI, LPI, and LPD. (Docket No. 58-1 at 73.) The letter also stated that CPG would be making a simultaneous offer for the acquisition of all equity interest in RGI and included numerous other terms regarding financing and commissions on the proposed transaction. Id. The "simultaneous offer" referred to by Mr. Torres appears to be a letter of intent sent by CPG to Mr. Torres which contemplates the drafting of a formal agreement to complete CPG's purchase of the equity interest in RGI. (See Docket No. 58-1 at 74-77.) Both the letter from Mr. Torres and the CPG letter provide for acceptance by mutual execution of those documents. (Docket No. 58-1 at 73, 77.) On

November 22, 2007, defendants sent a signed letter addressed to

Mr. Torres which stated in its entirety:

> After due deliberation regarding the offers on the
> table from you and Caribbean Properties Group for our
> Puerto Rico Properties, Cookie, Judy and I have
> determined that we want the total net proceeds from sale
> of all the properties to be $27,650,000.  The buyers will
> indemnify the sellers against any further liabilities.
> We look forward to proceeding swiftly with this
> transaction.

(Docket No. 58-1 at 96.)

On December 4, 2007, Mr. Torres responded to defendants

by sending a signed letter which began:

> After proper review and consulting with First Bank
> and Caribbean Property Group, LLC (CPG), I am pleased to
> inform you that your counter offer for the sale of your
> 95% equity interest in Plaza San Francisco Investment,
> LLC (PSF) and Las Piedras Investment, LLC (LPI), and 100%
> equity interest in Las Piedras Development, LLC (LPD) for
> an aggregate amount of $16,000,000.00 is accepted.  This
> acceptance is made together with CPG's acceptance on a
> separate letterhead to purchase Plaza Rio Grande shopping
> center for $29,800,000.00 less the existing loan balance
> of approximately $18,150,000.00 for net proceeds of
> $11,650,000.00, adding up a total net proceeds of
> $27,650,000.00 for all your Puerto Rico properties, as
> you requested.

(Docket No. 58-1 at 101.)

After noting that TCI and CPG would agree to assume all

liabilities related to defendants' Puerto Rico LLC's, Mr. Torres

stated:

> [u]pon your execution of this letter of intent, we will
> prepare and submit for your revision a draft of the
> Agreement of Purchase and Sale of Equity Interests in

[PSFI], LPI, and LPD, after which we will enter into a
due diligence period of 60 days to complete the revision
and preparation of all the documentation needed for
closing, which shall occur not later than 30 days after
expiration of the due diligence.

Please, execute and return this original at the bottom to
acknowledge your acceptance of the terms of this offer,
and keep a copy for your records.

(Docket No. 58-1 at 101.)  The letter includes an un executed

signature space for Mr. Becker beside Mr. Torres's signature.  Id.

As was the case with the previous joint offer for defendants'

LLC's, CPG sent a letter of intent regarding the purchase of the

equity interest in RGI dependent upon the mutual execution of that

letter of intent.  (See Docket No. 58-1 at 105.)  Mr. Becker

responded on the same day with a signed facsimile discussing

additional terms regarding tax concerns not discussed in

Mr. Torres's letter that could be resolved if defendants retained

some equity interest in their LLC's after the proposed transaction.

(Docket No. 58-1 at 113.)

## II.  Legal Analysis

### A.    Summary Judgment Standard

The Court's discretion to grant summary judgment is

governed by Rule 56 of the Federal Rules of Civil Procedure.  The

rule states, in pertinent part, that the court may grant summary

judgment only if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c); see also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the Court's denial of the motion for summary judgment.  For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute.  See Suarez v. Pueblo Int'l., Inc., 229 F.3d 49, 53 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine."  Material means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is genuine when a reasonable jury could return a verdict for the nonmoving party based on the evidence.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is well settled

that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Id. at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

**B.   Application of the Statute of Frauds**

The Puerto Rico Commercial Code provides that:

Commercial contracts shall be valid and shall cause obligations and causes of action whatever may be the form and language in which they are executed, the class to which they belong, and the amount of the contract, provided their existence is shown by any of the means provided by civil law. However, the testimony of witnesses shall not in itself be sufficient to prove the existence of a contract the amount of which exceeds three hundred dollars, unless such testimony concurs with other evidence.

P.R. Laws Ann. tit. 10, § 1302.  Courts have further held that
"[u]nder  Puerto  Rico  law,  a  commercial  contract  must  be
corroborated and this requirement extends not just to the existence
of  an  agreement  but  also  to  its  essential  terms."   See, e.g.,
Garita Hotel Ltd. P'ship, 122 F.3d at 89.

        Plaintiff  argues  that  P.R. Laws Ann., tit. 10, § 1302
("Section 1302") is "in the nature of a statute of frauds," which
may be waived by failure to assert it as an affirmative defense in
the  answer  to  the  complaint.   See Jewelers Mut. Ins. Co. v. N.
Barquet, Inc., 410 F.3d 2, 11 (1st Cir. 2005); (Docket No. 58 at 5-
6.)   Federal  Rule  of  Civil  Procedure  8(c)  provides  that  "[i]n
responding  to  a  pleading,  a  party  must  affirmatively  state  any
avoidance  or  affirmative  defense."   Fed.R.Civ.P. 8(c).   The  scope
of  this  rule  extends  to  any  affirmative  defense  premised  on  a
statute  of  frauds.    Id.   "Rule  8(c)  is  designed  to  provide
plaintiffs  with  adequate  notice  of  a  defendant's  intention  to
litigate  an  affirmative  defense,  thereby  affording  an  opportunity
to  develop  any  evidence  and  offer  responsive  arguments  relating  to
the defense."   Davignon v. Clemmey, 322 F.3d 1, 15 (1st Cir. 2003)
(citing  Knapp  Shoes,  Inc.  v.  Sylvania  Shoe  Mfg.  Corp., 15 F.3d
1222, 1226 (1st Cir. 1994)).   "There are certain exceptions to the
Rule  8(c)  bar  which  might  be  invoked,  inter alia, either where (i)
the  defendant  asserts  it  without  undue  delay  and  the  plaintiff  is

not unfairly prejudiced by any delay, . . . or (ii) the circumstances necessary to establish entitlement to the affirmative defense did not obtain at the time the answer was filed."  Id. (citing Depositors Trust Co. v. Slobusky, 692 F.2d 205, 208 (1st Cir. 1982)).[4]

        Although it is true in this case that defendants did not specifically cite to Puerto Rico's Commercial Code in their answer to the complaint, they argued in the joint initial scheduling conference memorandum, which was filed shortly thereafter, that the contract alleged in the complaint must be proved by non-testimonial evidence.  (See Docket No. 22; Docket No. 28 at 13.)  Defendants raised the same argument in the motion to dismiss the amended complaint.  (See Docket No. 45 at 14.)  As is clear from the record, the present motion for summary judgment is not the first time that defendants have raised a defense based on Section 1302 and there has been no undue delay or unfair prejudice caused by defendants' initial failure to assert that defense in the answer to the complaint.  Accordingly, Section 1302 applies to the present

_____

        [4] "Those cases which permit the interposition of an affirmative defense outside the pleadings generally have involved moderate delays, such as an attempt to raise the defense in a pretrial motion to dismiss or for summary judgment, rather than at trial or in a postjudgment motion."  Davignon, 322 F.3d at 15 (citing Lafreniere Park Found. v. Broussard, 221 F.3d 804, 808 (5th Cir. 2000); Mozingo v. Correct Mfg. Corp., 752 F.2d 168, 172 (5th Cir. 1985)).

case and the Court now proceeds to determine whether plaintiff has presented sufficient non-testimonial evidence to survive summary judgment on his contract claim.

### C.   Existence of a Contract under Puerto Rico Law

"To properly assert a claim for breach of contract, a party must sufficiently allege (1) a valid contract, (2) breach of that contract, and (3) resulting damages." First Medical Health Plan, Inc. v. Carmark PCS Caribbean, Inc., 681 F. Supp. 2d 111, 116 (D.P.R. 2010). "Under Puerto Rico law, a contract has three elements: consent, a definitive (and legal) object, and consideration." Citibank Global Markets, Inc. v. Rodriguez-Santana, 573 F.3d 17, 25 (1st Cir. 2009). In this case, the issue contested between the parties is whether the requisite consent existed to form a valid contract. (See Docket Nos. 54, 58, & 61.)

Under Puerto Rico law, "the consent of the contracting parties is an essential element of a contract. P.R. Laws Ann., tit. 31, § 3391. "'Consent is shown by the concurrence of the offer and acceptance of the thing and the cause which are to constitute the contract.'" Marrero-Garcia v. Irizarry, 33 F.3d 117, 122 (1st Cir. 1994) (citing P.R. Laws Ann. tit. 31, § 3401). Additionally, there must be a "meeting of the minds as to the terms agreed upon." K-Mart Corp. v. Davis, 756 F. Supp. 62, 66 (D.P.R. 1991) (finding that the parties did not reach a final contract

because the text of the agreement evidenced the defendant's intent
not to be bound until the parties had finalized negotiations); see
also Soc. de Gananciales v. Velez & Asoc., 145 D.P.R. 508, 517
(1998) (holding that a valid contract requires "a meeting of minds
that gave rise to an obligation, situation, or state of law
resulting from an agreement, and that created certain expectations
on the basis of which the parties acted").

     Plaintiffs' primary argument in response to defendants'
contention regarding the absence of consent is that Torres's
December 4, 2007, letter constituted an acceptance of a
counteroffer from defendants made subsequent to the initial joint
offer for defendants' LLC's made by TCI and CPG on October 30,
2007.  The "counteroffer" to which plaintiffs refer is the letter
sent by defendants on November 22, 2007.  In order to constitute a
valid offer under Puerto Rico law, a communication must "contain[]
all those elements of a contract as are deemed necessary so that
such contract may be perfected by the mere acceptance of the
offer."  Producciones Tommy Muñiz, Inc. v. COPAN, 13 P.R. Offic.
Trans. 664 (P.R. 1982).  "'Hence, there will be an offer whenever
it contains all the elements essential to the creation of the
contract, so that knowledge of the same will not require a new
agreement between the parties when there has been acceptance.'"

Id. (quoting B. Moreno Quesada, La oferta del contrato at 64-65, Coleccion Nereo, Barcelona (1963)).

Defendants' November 22, 2007, letter leaves out numerous details of the prior transaction proposed by TCI and CPG. The only information contained in that letter is defendants' desired total net proceeds from the transaction and their stance on the issue of indemnification regarding "further liabilities." (See Docket No. 58-1 at 96.) Torres's October 30, 2007, letter contained numerous, specific terms regarding the division of defendants' LLC's between TCI and CPG and the financing of the proposed transaction. (Docket No. 58-1 at 73.) Furthermore, CPG's letter of intent regarding the proposed transaction, which plaintiffs argue was attached to the October 30, 2007, letter, contemplates the negotiation of another, final agreement which would provide the specific terms for CPG's acquisition of RGI. (Docket No. 58-1 at 74-77.) Given the complexity of the proposed transaction, the terms of previous offers, and the language of defendants' November 22, 2007 letter, no rational factfinder could conclude that defendants' letter constituted a valid offer which required only TCI and CPG's acceptance to become effective. See Producciones Tommy Muñiz, Inc., 13 P.R. Offic. Trans. 664.

Even if defendants letter could be considered a counteroffer, the clear language of Torres's December 4, 2007

letter belies plaintiffs' contention that it constitutes an
acceptance of any counteroffer.  <u>See</u> <u>Marrero-Garcia</u>, 33 F. 3d
at 122 ("an acceptance should be immediate and definitive, should
coincide in all its terms with the offer, and should be made in the
manner required by the offeror") (citing Jose R. Velez-Torres, <u>Los</u>
<u>Contratos</u> at 48-49 (1986)).  In that letter, Torres includes
numerous terms regarding the acquisition of particular entities and
the manner of carrying out the financial transaction.  (Docket
No. 58-1 at 108.)  He specifically describes his correspondence as
a "letter of intent" and contemplates the specific negotiation of
terms in a formal "Agreement of Purchase and Sale of Equity
Intersests."  (Docket No. 58-1 at 108.)  Torres concludes the
letter characterizing it as an offer and expressly provides for
acceptance of its terms by defendants' execution of the same.  <u>Id.</u>
Furthermore, the purported separate acceptance by CPG, which
plaintiffs argue was attached to Torres's letter, is clearly a
letter of intent which requires acceptance by mutual execution.
(<u>See</u> Docket No. 58-1 at 109-112.)

        Plaintiffs' other argument regarding consent is that
Becker's December 4, 2007, facsimile constituted an acceptance of
the terms of the transaction proposed in Torres's December 4, 2007,

letter.[5]  (Docket No. 58 at 10.)  The facsimile, however, proposes

different terms from Torres's December 4, 2007, letter, including

defendants' continued ownership of at least some of the equity

interest in the LLC's subject to the proposed transaction.  (See

Docket No. 58-1 at 113.)  Furthermore, the facsimile does not

comply with the express manner of acceptance expressly mandated by

both Torres's letter and CPG's attached letter of intent, i.e.,

execution and return of those documents.  (See Docket No. 58-1

at 108-113.)  Thus, no reasonable jury could find that Becker's

December 4, 2007, facsimile constitutes an acceptance of the terms

of the transaction proposed in Torres's December 4, 2007, letter.

See Marrero-Garcia, 33 F. 3d at 122.

In order to demonstrate the existence of the contract

alleged in the complaint, plaintiffs must establish defendants'

consent through nontestimonial evidence.  See Garita Hotel Ltd.

---

[5] Plaintiffs also cite to Inface, Inc. v. Timex Corp., 488
F.3d 46, 55-56 (1st Cir. 2007), and Tamayo v. Banco Santander P.R.,
552 F. Supp. 2d 172, 178-79 (D.P.R. 2007), for the proposition that
"[q]uestions regarding whether contracting parties had a 'meeting
of the minds' are paradigmatic, trial-worthy issues when the non-
moving party presents a plausible, factual scenario that supports
the existence of the essential elements of a contract." (Docket
No. 58 at 13.)  Neither case supports such a general proposition.
Both cases found non-moving parties to have submitted properly
competent evidence sufficient to defeat summary judgment on the
issue of contract formation. See Inface, Inc., 488 F.3d at 55-56;
Tamayo, 552 F. Supp. 2d at 178-79.  Because plaintiffs have failed
to do what was done in Tamayo and Inface, neither citation makes
summary judgment inappropriate in the present circumstances.

P'ship, 122 F.3d at 89.  Plaintiffs have failed to point to any
portion of the relevant correspondence or any other properly
submitted evidence which establishes the requisite consent.
Without that consent, there is no contractual agreement imposing
liability on defendants.  See P.R. Laws Ann., tit. 31, § 3391.
Accordingly, plaintiffs cannot maintain a claim for breach of
contract.

    D.   *Culpa in Contrahendo* Claim

        Even if in the face of plaintiffs failure to establish a
breach of contract claim, "[t]he mere determination that there is
no contract does not absolve the withdrawing party from all
liability . . . [I]n a civil code system there is a possibility of
extra contractual liability."  Shelley v. Trafalgar House Public
Ltd. Co., 977 F. Supp. 95, 97 (D.P.R. 1997).  Defendants argue that
plaintiff has failed to produce any evidence that could support
such "extra contractual liability."  (See Docket No. 54 at 22-25.)

        Puerto Rico recognizes the *culpa in contrahendo* doctrine
as "an extra contractual cause of action pursuant to Article 1802
of the Puerto Rico Civil Code."  Shelley, 977 F. Supp. at 98 n.6.
Under *culpa in contrahendo*, some "negotiations toward an agreement
can . . . give rise to mutual expectations that the parties will
bargain in good faith and refrain from misconduct."  Ysiem, 328
F.3d at 24.

*Producciones Tommy Muñiz, Inc. v. COPAN*, 13 P.R. Offic. Trans. 664 (P.R. 1982), set out a "rather general test dependent on the circumstances" to ascertain an unjustified or arbitrary interruption of negotiations. *Ysiem Corp. v. Commercial Net Lease Realty, Inc.*, 328 F.3d 20, 24 (1st Cir. 2003). "The *culpa in contrahendo* test is not very precise and the courts appear reasonably cautious in applying a doctrine that could, if applied too freely, chill negotiations rather than facilitate them." *Id.* Moreover, the Supreme Court of Puerto Rico labeled *culpa in contrahendo* as a restrictive doctrine. *Shelley*, 977 F. Supp. at 98. The court in *Tommy Muñiz* examined the following factors:

> (1) the development of the negotiations, (2) how did they begin, (3) their course, (4) the conduct of the parties throughout them, (5) the stage at which the interruption took place, (6) the parties' reasonable expectations to form a contract, as well as any other relevant circumstance under the facts of the case submitted to judicial scrutiny.

13 P.R. Offic. Trans. 664.

In this case, the correspondence between the parties demonstrates that negotiations regarding the joint proposal by TCI and CPG occurred over the course of a few months and consisted of the exchange of letters and facsimiles concerning various terms of the proposed transaction. (*See* Docket No. 58-1.) At the time the negotiations stalled, the communications originating from TCI and CPG contemplated further negotiation of a final agreement upon

execution of those communications by defendants.  See id.
Defendants had not, however, executed any of the communications
from TCI or CPG, which were at times referred to as letters of
intent, and had consistently responded to the various offers with
additional or different terms to the proposed transaction.  See id.

Considering the factors outlined in Tommy Muñiz, the
correspondence between the parties does not reveal circumstances
which justify the application of the *culpa in contrahendo* doctrine.
See Ysiem Corp., 328 F.3d at 24-25; cf. Satellite Broad. Cable,
Inc. v. Telefonica de España, 807 F. Supp. 210, 216-217 (D.P.R.
1992) (finding extra-contractual liability where correspondence
during negotiations revealed specific misconduct of a negotiating
party); see also Tommy Muñiz, 13 P.R. Offic. Trans. 664.
Furthermore, plaintiffs have failed to submit properly any other
evidence of misconduct or bad faith on the part of defendants,
independent of the mere interruption of negotiations, that suffices
to maintain a claim of *culpa in contrahendo*.  See Tommy Muñiz,
13 P.R. Offic. Trans. 664.

**CONCLUSION**

For the reasons expressed above, the Court **GRANTS** defendants'
motion for summary judgment, (Docket No. 54).  Plaintiffs' claims
are **DISMISSED WITH PREJUDICE**.  All pretrial and trial dates are

Civil No. 08-1320 (FAB)                                                    25

**VACATED** and all motions *in limine* filed in preparation for trial,

(Docket Nos. 72, 74, 75, 76, & 77), are **MOOT.**

      **IT IS SO ORDERED.**

      San Juan, Puerto Rico, October 20, 2010.

                                     s/ Francisco A. Besosa
                                     FRANCISCO A. BESOSA
                                     UNITED STATES DISTRICT JUDGE